**BILTMORE MUSIC CORPORATION and Herbert Brownell, Jr., Attorney General of the United States, as Successor to the Alien Property Custodian, Appellants,**

v.

**Robert W. KITTINGER, Appellee.**

**No. 14625.**

United States Court of Appeals
Ninth Circuit.

Aug. 3, 1956.

Writ of Certiorari Denied Dec. 17, 1956.
See 77 S.Ct. 327.

**9.** Quinones v. United States, supra; Dixie Oil Co. v. United States, supra.

Abraham Marcus, Beverly Hills, Cal., Louis A. Dreyer, New York City, Leonard Zissu, Beverly Hills, Cal., for appellant Biltmore Music Corp.

Laughlin E. Waters, U. S. Atty., Arline Martin, Asst. U. S. Atty., Los Angeles, Cal., Herbert Brownell, Jr., Asst. Atty. Gen., for appellant Herbert Brownell, Jr.

William C. Babcock, Frederick E. Mueller, Long Beach, Cal., for appellee.

Before FEE and CHAMBERS, Circuit Judges, and WALSH, District Judge.

JAMES ALGER FEE, Circuit Judge.

This action for infringement of copyright was tried by the court without a jury. In the court below and in the arguments here, the pleadings have been disregarded. There was an agreed statement of facts introduced into the record and upon this alone the cause was decided. Findings of fact, conclusions of law and judgment for defendant were entered.

The agreed statement of facts is as follows:

"It Is Hereby Stipulated by and between the parties hereto, through their respective counsel, that the following statements of fact are true:

"1. The cause of action involved herein arises under the copyright law of the United States (17 United States Code, Sections 1 to 215, inclusive) and the Trading With the Enemy Act (50 United States Code, Appendix Section 17) and jurisdiction is based upon Section 1331 of Title 28 of the United States Code as Amended.

"2. Plaintiff Biltmore Music Corporation (hereinafter referred to as 'Biltmore') is and at all times since March 8, 1948, has been a corporation organized and existing under the laws of the State of New York.

"3. Plaintiff Herbert G. Brownell is the Attorney General of the United States and is the successor to the Alien Property Custodian.

"4. Defendant Robert W. Kittinger (hereinafter referred to as 'Kittinger' or as 'defendant') is a resident of the City of Long Beach, State of California.

"5. Prior to January 1, 1935, Gerhard Ebeler and Hans Otten, then Nationals of Germany, composed the lyrics and music, respectively, of a musical composition entitled 'Du Kannst Nicht Treu Sein' (sometimes hereinafter referred to as the 'composition') and thereafter assigned all of their rights therein to Gerhard Ebeler Verlag, a German publisher, who, during the year 1935, made application for and was granted a copyright registration under Registration Number E For. No. 39841. A copy of the copyright certificate is marked Exhibit I and is attached hereto. At the time said copyright was issued, citizens of Germany were entitled to copyright in the United States of America by virtue of Presidential proclamation to that effect.

"6. Between 1935 and 1938 Gerhard Ebeler Verlag, the then copyright owner, licensed the Electrola Company, a German company, to manufacture and sell phonograph records of the composition in Germany and pursuant to said license, phonograph records of the composition were manufactured and sold in Germany by said Electrola Company.

"7. During 1938 the Radio Corporation of America, R. C. A. Victor Division (hereinafter referred to as 'R. C. A.') placed phonograph records of the composition on sale in the United States. Said records were made in the United States from the master which had been manufactured in Germany by the Electrola Company. R. C. A. had no license nor permission to manufacture or sell said records and paid no royalties thereon and at no time prior to April of 1948 notified Gerhard Ebeler Verlag or the Alien Property Custodian or Biltmore that the said recording had been manufactured or released. R. C. A. was under the impression that the composition was mechanically free in the United States.

"8. During the period between January 1, 1947, and January 1, 1949, Kittinger was the President and General Manager of Chicago Recording Studios, Inc., an Illinois corporation (sometimes hereinafter referred to as 'Chicago') which was engaged in manufacturing and selling phonograph records. During said period, Kittinger arranged for the recording, release and sale of all phonograph records issued by Chicago.

"9. Shortly prior to August 20, 1947, Ken Griffin, a musician who is hereinafter referred to as 'Griffin,' contacted Kittinger and advised him that he had made a number of arrangements of various musical compositions which he was willing to record for the production of 'masters.' 'Masters' are original recordings which are used for the production of dies from which phonograph records are produced. On August 20, 1947, Kittinger, acting on behalf of Chicago, employed Griffin, under a written contract for a consideration of $165.00 which was paid to Griffin, to record eight masters. A copy of said employment contract, which is on a form approved by the American Federation of Musicians, is attached hereto marked Exhibit II. On or about the same date and pursuant to said contract, Griffin made eight recordings for Chicago for the production of masters, one of which masters was a new arrangement of the composition as an organ solo which he had previously composed and which he played and recorded as an organ solo from memory inasmuch as he had not made a written score thereof. The arrangement of the composition which Griffin recorded as aforesaid is hereinafter referred to as the 'new arrangement.'

"10. In October, 1947, Chicago issued phonograph records of the new arrangement which had been recorded by Griffin. Said phonograph records were issued under the title, 'You Can't Be True,' and bore Chicago's 'Broadcast' label and its Serial Number 460. Between October 1, 1947, and September 1, 1953, Chicago, under the management and control of Kittinger, sold 207,000 phonograph records of the new arrangement. Of said records 4,000 were sold between October 1, 1947, and March 16, 1948, and the remaining 203,000 were sold between March 16, 1948, and March 14, 1952. Neither Kittinger nor Chicago at any time filed a statutory notice of intention to use the 'composition' or the new arrangement or paid the mechanical fees required by the Copyright Act, or any other royalties, or had the permission of the Alien Property Custodian or Gerhard Ebeler Verlag or J. F. Bard or J. F. Bard Co., Inc., or Biltmore to manufacture or sell records of the 'composition' or the new arrangement.

"11. Between August 20, 1947, and January 1, 1948, Griffin recorded the new arrangement a second time for the production of a master. The second recording was made for Rondo Records, Inc., a phonograph record manufacturer which was a competitor of Chicago. At that time, J. F. Bard (who is hereinafter referred to as 'Bard') was the Vice President of Rondo Records, Inc.

"12. Bard, after hearing the new arrangement played by Griffin personally and after hearing the phonograph record of the new arrangement issued by Chicago, and on or about February 11, 1948, composed and wrote his own arrangement and his own lyrics to the music of 'Du Kannst Nicht Treu Sein' and secured an unpublished registration thereon, No. E Unp. 117804. A copy of said copyright certificate and the unpublished manuscript registered therewith are attached hereto as Exhibits III and III(a), respectively. It is not claimed by plaintiffs that defendant infringed said copyright.

"13. Thereafter, and prior to March 15, 1948, Dave Dreyer, who had not theretofore heard the record issued by Chicago or the new arrangement played by Griffin personally, and Bard collaborated in composing English lyrics for the new arrangement, which lyrics were entitled, 'You Can't Be True Dear,' and are hereinafter referred to as the 'lyrics.' The 'lyrics' are a loose translation of the original German lyrics. The lyrics and the new arrangement referred to in paragraph 9 hereof constitute the Biltmore

publication referred to in paragraph 21 hereof.

"14. On February 17, 1948, Griffin signed and delivered to Bard a written instrument, purporting to be an assignment to Bard of the new arrangement. A copy of said written instrument is attached hereto marked Exhibit IV.

"15. On February 20, 1948, Griffin entered into a written agreement with Chicago to record exclusively for Chicago, a copy of which agreement is attached hereto marked Exhibit V. At the same time, Chicago paid Griffin an advance royalty of $250.00 and received a receipt therefor, a copy of which is attached hereto marked Exhibit VI.

"16. On February 24, 1948, all rights, privileges and powers in connection with Copyright 'E For. No. 39841' were seized and vested by the Alien Property Custodian and title thereto was transferred to the Attorney General of the United States by Vesting Order 500A-233, a copy of which is marked Exhibit VII and is attached hereto.

"17. On March 2, 1948, J. F. Bard Company, Inc., which was engaged in the business of distributing phonograph records and is hereinafter referred to as 'Bard Company,' was granted a license, Number E1277, by the Office of the Alien Property Custodian which permitted Bard Company to publish sheet music and issue phonograph records of the 'composition' in the form of the new arrangement and with the new lyrics. Said license expressly permitted Bard Company to sublicense others for the same purposes and to assign to Biltmore. A copy of said license is marked Exhibit VIII and is attached hereto. On March 5, 1948, Bard Company assigned its rights under said license to Biltmore.

"18. On March 5, 1948, Bard assigned copyright 'E Unp. No. 117804' to Biltmore. A copy of said assignment, which was recorded in the United States Copyright Office on March 8, 1948, is attached hereto marked Exhibit IX. If called as a witness in this case Bard would testify that on March 8, 1948, he assigned to Biltmore the rights which he acquired from Griffin under the instrument referred to in paragraph 14 hereof and that Biltmore assumed his obligations thereunder; he would further testify that said assignment was oral and was not recorded in the United States Copyright Office.

"19. On March 8, 1948, Biltmore was incorporated under the laws of the State of New York. On March 12, 1948, Dreyer was elected President and Bard was elected Vice President of said corporation. On the same date both Bard and Dreyer were elected directors of said corporation. Both of the said persons have occupied said offices at all times to the present date.

"20. On March 9, 1948, Biltmore filed a Notice of Use in the United States Copyright Office. A copy of said Notice of Use is marked Exhibit X and is attached hereto.

"21. Shortly prior to March 15, 1948, Biltmore published sheet music copies of 'You Can't Be True, Dear,' consisting of the new arrangement and the new lyrics. The first page of music of said published sheet music copies contained the words 'Copyright 1948' and the name and address of Biltmore. On March 15, 1948, Biltmore deposited two complete copies of said published sheet music in the United States Copyright Office. On April 9, 1948, Biltmore was granted Copyright Registration No. E Pub. No. 24797 on the new arrangement and the new lyrics. A copy of said certificate is marked Exhibit XI and is attached hereto.

"22. On March 16, 1948, Bard wired Defendant as follows: " 'Stop immediately pressing You Can't Be True, Dear, as infringement of valid copyright controlled by Biltmore Music Corporation, 1650 Broadway, New York, vested with Attorney General. Apply to Biltmore Music Corporation for license otherwise their attorney will take out injunction. To avoid heavy penalty under law suggest you get in touch with me immediately.'

"23. Defendant and Chicago failed to answer said telegram and at no time did

either of them request or obtain from Bard Company or Biltmore a license or pay any royalties to either of said corporations or any other person, firm or corporation in connection with its phonograph records of the new arrangement.

"24. On March 18, 1948, Defendant wrote to the office of Alien Property requesting forms for filing an application for a license with respect to the new arrangement. Correspondence ensued between the Defendant and the Office of Alien Property but no license was issued to Chicago or Defendant. Copies of said correspondence are marked Exhibits XII, XIII, XIV, and XV and are attached hereto.

"25. On May 10, 1948, Griffin entered into a written agreement with Biltmore respecting the new arrangement, a copy of which agreement is marked Exhibit XVI and is attached hereto.

"26. Commencing in March, 1948, Biltmore publicized and exploited 'You Can't Be True, Dear,' at a substantial expense, and it achieved great popularity and ultimately became one of the most popular 'song hits' in America.

"27. Between March 18, 1948, and November 9, 1948, Biltmore licensed eighteen phonograph record manufacturing companies, including Rondo Records, Inc., to manufacture and sell records of 'You Can't Be True, Dear.'

"28. On September 8, 1948, Biltmore's attorneys wrote to Broadcast Record Company for the attention of Kittinger stating that it was infringing Biltmore's copyright, a copy of which letter is marked Exhibit XVII and is attached hereto.

"29. In 1950 plaintiffs instituted suit for copyright infringement against Chicago and Kittinger in the State of Illinois. Plaintiffs were unable to effect service upon Kittinger in said action.

"30. At no time was a Notice of Use under 17 U.S.C. Section 1(e) filed in the Copyright Office by Griffin with respect to the new arrangement.

"31. At no time was a Notice of Use unde 17 U.S.C. Section 1(e) filed in the Copyright Office by the Office of Alien Property or the Attorney General of the United States or Gerhard Ebeler or Hans Otten or Gehard Ebeler Verlag or anyone else with respect to the composition or the new arrangement, except for the Notice of Use mentioned in paragraph 20 hereof.

"32. Defendant has at no time since August 20, 1947, sold phonograph records of an arrangement of the 'composition' other than the new arrangement as first recorded by Griffin as an organ solo for Chicago. The sale of phonograph records of the new arrangement by defendant was at all times with the permission of Chicago. The phonograph records sold by defendant were all identified by the title, 'You Can't Be True.' "

■■ Since the owners of the United States Copyright on the composition "Du Kannst Nicht Treu Sein" did not comply with the provisions of 17 U.S.C.A. § 1(e), which constitute a condition precedent to collecting statutory royalties for mechanical reproduction of the composition, appellants cannot recover[1] and the judgment must be affirmed. The vesting act did not clothe the Attorney General with any power to avoid these conditions, which are set up by the statute and which were not repealed by implication or otherwise. The rule that the terms of the statute relating to copyrights must be

[1] "3. That the failure of Plaintiff, Attorney General and his predecessors in title to the copyright of Du Kannst Nicht Treu Sein, to comply with the provisions of section 1(e), 17 U.S.C., precludes recovery *against* Defendant *for his mechanical* reproduction of said musical composition.
*     *     *     *     *
"5. That the failure of Plaintiff, Biltmore Music Corporation's predecessor in title to the copyright on said 'new arrangement' of Du Kannst Nicht Treu Sein to comply with the provisions of section 1(e), 17 U.S.C., precludes Plaintiff Biltmore Music Corporation from any recovery against Defendant for the mechanical reproduction of said 'new arrangement.' " Conclusions of Law (Record, pages 84–85).

substantially complied with or no advantage can be taken of its provisions is applicable to the present situation.

 Griffin was thereby relieved of the necessity of obtaining permission of these owners to devise and record the new arrangement. Since he was the composer of the new arrangement, he was vested with a right to grant valid licenses. This was a vested property right which he could assign.[2]

Biltmore Music Corporation could therefore acquire no exclusive rights to the new arrangement in entire disregard of the fact that Griffin had recorded this variation for the production of a master and sold it to Kittinger. Thereafter, according to the stipulation, defendant has at no time since August 20, 1947, sold phonograph records of an arrangement of the composition "other than the new arrangement as first recorded by Griffin as an organ solo for Chicago." The statute provides in § 1(e):

> "Any failure to file such notice shall be a complete defense to any suit, action, or proceeding for any infringement of such copyright."

Some four thousand records were sold and used by the public before there was an application for statutory copyright protection by March 15, 1948. We do not believe that the application for copyright upon that date did away with the rights which were acquired by defendant before that time. The questions resolved by the court were largely questions of fact. No finding on this phase has been shown to be clearly erroneous, and the rules are correctly stated.

However, the trial judge went beyond this primary question and likewise determined that the statutory copyright registered March 15, 1948, was invalid. This was not involved in the issues before the court, although it was raised by the pleadings. But we think it was sufficient to follow the language of the statute and hold that the failure to give notice of use was a complete statutory defense to all acts being done by Kittinger and Chicago since August 20, 1947. Therefore, the holding will be modified by striking out the sixth paragraph of the conclusions and the paragraph numbered 6 of the judgment. Otherwise, the judgment is affirmed.

---

2. "4. That Defendant's manufacture and sale of phonograph records of a 'new arrangement' of a musical composition entitled Du Kannst Nicht Treu Sein, and named You Can't Be True, has been under a valid license granted by the composer of said 'new arrangement.'" Conclusions of Law (Record, pages 84–85).